[No. B148102. Second Dist., Div. Four. Aug. 2, 2001.]

STI OUTDOOR LLC, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ELLER MEDIA COMPANY, Real Party in Interest.

[No. B148106. Second Dist., Div. Four. Aug. 2, 2001.]

LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION
AUTHORITY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ELLER MEDIA COMPANY, Real Party in Interest.

## COUNSEL

Manatt, Phelps & Phillips, Ellen M. Berkowitz, J. Andrew Douglas, Geoffrey A. Weg and Jack S. Yeh for Petitioner STI Outdoor LLC.

Lloyd W. Pellman, County Counsel, Steven J. Carnevale and Augustin M. Zuniga, Deputy County Counsel, for Petitioner Los Angeles County Metropolitan Transportation Authority.

No appearance for Respondent.

Jeffer, Mangels, Butler & Marmaro, Alex O. Tamin and Andrew R. Hunter for Real Party in Interest.

---

**OPINION**

**HASTINGS, J.**—Real Party in Interest Eller Media Company (Eller) requested certain documents from the Los Angeles County Metropolitan Transportation Authority (the MTA) pursuant to the California Public Records Act (Gov. Code, § 6250 et seq.).[1] When the MTA refused to turn the documents over, Eller filed a petition for a writ of mandate in the Los Angeles County Superior Court (case No. BS065832). STI Outdoor LLC (STI) was given leave to intervene in the action as a real party in interest. At a hearing on December 29, 2000, the superior court granted the petition in part, ordering the MTA to produce some of the documents requested. STI then filed a petition for writ of mandate in this court, and was assigned case No. B148102. A companion petition was filed by the MTA in case No. B148106. We ordered that the two writ petitions be consolidated. We issued an order to show cause on May 3, 2001, ordering the respondent superior court to show cause why it should not enter a new and different judgment exempting from disclosure three documents.[2] Eller filed a return to the petition on May 29, 2001, and STI and the MTA filed replies to the return. After considering all the pleadings and oral argument by the parties, we conclude that extraordinary relief is warranted and grant the petitions.

FACTUAL AND PROCEDURAL BACKGROUND

In September 1997, the MTA issued its request for proposal No. OP65102504 (the RFP) soliciting bids for the installation of automated

---

[1]Government Code section 6250 provides that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."

[2]We initially issued a temporary stay order and request for briefing on the timeliness of the petition pursuant to Government Code section 6259, subdivision (c). Then, on March 22, 2001, we issued an order finding the petitions to have been timely filed and requesting that real party in interest Eller file preliminary opposition to the petition on the issue of whether the disclosure of the three documents was "reasonably necessary" within the meaning of Evidence Code sections 912 and 952. After Eller filed its preliminary opposition and the MTA filed a reply, we issued the order to show cause.

public toilets as a service to its bus and rail riders (hereinafter referred to as the Project). The RFP provided, in essence, that in exchange for the construction, installation and maintenance of 10 automatic pay toilets, the MTA would award a contract to allow the successful bidder the use of certain advertising sites at selected, unspecified locations along its routes and on other real property owned by the MTA. Real party in interest Eller reviewed the RFP and concluded that the advertising sites that were to be made available were not in highly desirable, freeway-viewable locations. Accordingly, it did not submit a bid to the MTA. When the bidding period ended on December 18, 1997, petitioner STI was the only party that submitted a bid in response to the RFP.

STI's bid was accepted and it began negotiations with the MTA regarding a license agreement for the Project. In this connection, STI employed the law firm of Manatt, Phelps & Phillips (the Manatt firm). A license agreement regarding the construction of the toilets and the scope of the advertising space was not entered into until November 1999, almost two years after the close of bidding.

According to Eller, sometime after the execution of the license agreement, it discovered that the advertising space to be awarded to the successful bidder in connection with the Project consisted of approximately 80 highly desirable above-ground spaces which could be viewed by vehicles traveling along the freeway, and not just by subway users. Eller claimed that during the RFP bidding period, the MTA had represented to it that the advertising spaces available were not freeway viewable and were limited to no more than 35 spaces. On August 22, 2000, Eller sent a letter to the MTA requesting that it produce all information and documents in its possession pertaining to the RFP, pursuant to the California Public Records Act (Gov. Code, §§ 6250-6268) and the Freedom of Information Act (5 U.S.C. § 552).

When the MTA did not produce the requested documents, Eller filed its petition for writ of mandate in superior court. STI filed an application to intervene, which was granted. Then, MTA produced certain documents, stating that it was withholding certain other documents.

Among the items the MTA refused to produce were three documents referred to by the parties as item C, item R and item V. Item C is a memo from Augustin Zuniga, from the office of the county counsel, general counsel for MTA, to Velma Marshall, the MTA's director of real estate, dated January 22, 1999. Item R is a memo from the Manatt firm to STI dated August 2, 1998. Item V is a letter from Velma Marshall to Don Davidson, president of STI, dated January 27, 1999.

In opposition to Eller's superior court petition, MTA asserted the work product privilege and the attorney-client privilege as to the documents prepared by county counsel. It submitted a declaration from Velma Marshall, its director for real estate, in which she stated that during negotiations with STI, the selected contractor for the Project, she received a letter from STI requesting information concerning MTA's position on certain matters involving the Project. She then requested county counsel to provide legal advice regarding that letter. She stated, "I . . . informed [county counsel] that the advice was needed by [MTA] Executive Management to resolve an issue that would then permit current negotiations of the license agreement for the Project to move forward." Item C was a written memorandum prepared by Deputy County Counsel Augustin M. Zuniga, which responded to her request for legal advice concerning the letter from STI. Marshall then forwarded a copy of the legal memorandum to Don Davidson of STI "to permit MTA and STI to better understand each other[']s position for the purpose of resolving certain issues surrounding negotiations relating to the license agreement under negotiation." Item V is the cover letter to Davidson.

STI also filed an opposition to Eller's petition, asserting the attorney-client privilege as to documents shared between the MTA and STI concerning a legal opinion about the Project. Item R is a legal memorandum prepared by the Manatt firm addressed to STI, dated August 2, 1998. The memorandum specifically states as part of the operative facts that STI is currently in negotiations with the MTA to enter a license agreement under which STI would furnish, install, and maintain automated public toilets and advertising display structures.

In reply to the opposition, Eller contended, inter alia, that the attorney-client privilege could not be asserted because the documents in question were exchanged three months before the MTA voted to award and negotiate the contract with STI. It argues, therefore, that no shared interest could exist until the date of that vote, April 29, 1999.

At a November 20, 2000, hearing on Eller's petition, the trial court stated, "I don't believe that the evidence before me shows that the document was prepared by the MTA's counsel for the common benefit of the county and your client. I believe that at the time what the evidence shows is at the time the document was created, the MTA was dealing with your client on an adversarial, arm's-length basis, to try to negotiate a contract. [¶] It sought the advice of its lawyers as to how to negotiate the contract with you. Once it got a contract with you, or close to a contract with you, then it became in the interest of the agency, apparently, to share this information with you. [¶] But I don't believe that the evidence before me shows that the document was

created for the joint benefit of both agencies." In its written minute order, the court rejected the contention that the attorney-client privilege applied to communications between the MTA and STI, but stated that it would examine the withheld documents in camera to determine if any other exemption applied.

After reviewing in camera the many documents requested, the trial court found, inter alia, that item C was not prepared for use in litigation and should be produced. Items R and V were found to be "not exempted" under Government Code section 6254, subdivision (h)[3] and ordered produced.

## Discussion

■ Government Code section 6254, subdivision (k) exempts from disclosure "[r]ecords the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege."

Evidence Code section 912, subdivision (d) provides: "A disclosure in confidence of a communication that is protected by . . . Section 954 (lawyer-client privilege) . . . , when such disclosure is *reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted*, is not a waiver of the privilege." (Italics added.)

Evidence Code section 952 provides that a " 'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present *to further the interest of the client* in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or *the accomplishment of the purpose for which the lawyer is consulted. . . .*" (Italics added.)

In *Raytheon Co. v. Superior Court* (1989) 208 Cal.App.3d 683 [256 Cal.Rptr. 425], a federal investigation was commenced regarding the toxic condition of certain property. Two unaffiliated corporations implicated in the investigation exchanged certain documents between themselves and their counsel. Several years later, both corporations, and others, were named as

---

[3]This section provides that "nothing in this chapter shall be construed to require disclosure of records that are any of the following: [¶] . . . [¶] (h) The contents of real estate appraisals or engineering or feasibility estimates and evaluations made for or by the state or local agency relative to the acquisition of property, or to prospective public supply and construction contracts, until all of the property has been acquired or all of the contract agreement obtained. . . ." (Gov. Code, § 6254, subd. (h).)

defendants in a lawsuit by private parties seeking damages for causing the toxic condition. When the plaintiffs sought production of the documents that the two corporations had shared between themselves and their respective counsel, the corporations claimed the documents were protected by the attorney-client and work-product privilege. The Court of Appeal ordered the matter remanded for a determination pursuant to Evidence Code section 912 of whether the disclosure of the documents was reasonably necessary to accomplish the purpose for which the attorneys were consulted. (*Raytheon*, at p. 688.)

In *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582 [147 Cal.Rptr. 915], the wife in marital dissolution proceedings sought disclosure of documents from her husband. The documents had been shared by the husband with his son and with third persons during a lawsuit that involved the family business. The attorney-client privilege was found not to be waived because disclosure was reasonably necessary to further the interests of the husband in the business litigation. (*Id.* at p. 588.)

Federal cases applying California law also support the reasoning of *Raytheon* and *Cooke*. (*Bank of the West v. Valley Nat. Bank of Arizona* (N.D.Cal. 1990) 132 F.R.D. 250; *Great American Surplus Lines Ins. v. Ace Oil Co.* (E.D.Cal. 1988) 120 F.R.D. 533.)

The cases cited by Eller are inapposite. *Walsh v. Northrop Grumman Corp.* (E.D.N.Y. 1996) 165 F.R.D. 16; *Duplan Corporation v. Deering Milliken, Inc.* (D.S.C. 1975) 397 F.Supp. 1146; and *Katz v. AT & T Corp.* (E.D.Pa. 2000) 191 F.R.D. 433 do not interpret Evidence Code section 912, nor do they interpret California law. *Allendale Mut. Ins. v. Bull Data Systems* (N.D.Ill. 1993) 152 F.R.D. 132, relied on heavily by Eller, does not even involve materials which were in response to a request for legal advice, but were documents generated in the ordinary course of business. (*Id.* at p. 138.)

Eller relies on dicta in *Insurance Co. of North America v. Superior Court* (1980) 108 Cal.App.3d 758 [166 Cal.Rptr. 880, 14 A.L.R.4th 581] (*INA*) and *First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.* (N.D.Cal. 1995) 163 F.R.D. 574 for the proposition that "legal" communications are protected, but "business" communications are not. Neither *INA*, which involves disclosures amongst corporate counsel of various affiliated corporate entities, nor *First Pacific,* which involves disclosure between an insured's *Cumis* (*San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494]) counsel and counsel for the insurer, is applicable to the situation with which we are presented here. We are not persuaded that the attorney-client privilege is limited to litigation-related communications. Evidence Code sections 912 and 952 do not use the

terms "litigation" or "legal communications" in their description of privileged disclosures, but specifically refer to "the accomplishment of the purpose" for which the lawyer was consulted. Attorneys are consulted for a myriad of reasons besides litigation.

Here, the declarations and papers submitted by the MTA and STI establish that items C and R were documents prepared by counsel, which were circulated between two parties bound by an offer and acceptance in contemplation of a binding, detailed license agreement. Item V was a transmittal letter between the parties discussing the topic of the legal memoranda. The evidence supports the contention that the disclosure of such documents was reasonably necessary to further the interests of both parties in finalizing negotiations for the license agreement. Accordingly, the trial court erred in finding that the attorney-client privilege was waived.

## DISPOSITION

Let a peremptory writ of mandate issue, ordering the respondent court to vacate its order entered on December 29, 2000, insofar as that ruling required production of those documents referred to as items C, R, and V, and to which there is a valid claim of privilege. Our temporary stay order filed on May 3, 2001, shall remain in effect until this opinion is final. Petitioners MTA and STI are awarded their costs.

Vogel (C. S.), P. J., and Curry, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied October 31, 2001. Kennard, J, and Werdegar, J., were of the opinion that the petition should be granted.