[No. A103055. First Dist., Div. Four. Feb. 20, 2004.]

MCKESSON HBOC, INC., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
OREGON PUBLIC EMPLOYEES RETIREMENT BOARD et al., Real
Parties in Interest.

1232

**COUNSEL**

Skadden, Arps, Slate, Meagher & Flom, James E. Lyons, Timothy A. Miller; Sheppard, Mullin, Richter & Hampton and Robert J. Stumpf, Jr. for Petitioner.

James Arthur Howell; Giovanni Prezioso, Meyer Eisenberg, Melinda Hardy and Edward C. Schweitzer, Jr., for United States Securities and Exchange Commission as Amicus Curiae on behalf of Petitioner.

Latham & Watkins, James Joseph Farrell, Robert K. Lu, Houman B. Shadab, Laurie B. Smilan, David M. Brodsky, Matthew D. Harrison and George R. Kramer for Securities Industry Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Cooper & Kirkham, Josef D. Cooper, Tracy R. Kirkham, John J. Bogdanor; Stoll, Stoll, Berne, Lokting & Shlachter and Scott A. Shorr for Real Party in Interest State of Oregon.

Lieff, Cabraser, Heimann & Bernstein, Richard M. Heimann, Elizabeth J. Cabraser, Joy A. Kruse and Steven E. Fineman for Real Party in Interest Merrill Lynch Fundamental Growth.

Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Joseph J. Tabacco, Jr., Nicole Lavallee and Karen Rosenthal for Real Party in Interest Utah State Retirement Board.

Heins, Mills & Olson, Bryan L. Crawford; Howard, Phillips & Andersen and Gregory D. Phillips for Real Party in Interest Minnesota State Board of Investment.

## OPINION

**KAY, P. J.**—The issue raised in this writ proceeding is whether the target of a government investigation may share privileged documents with the government without waiving the attorney-client privilege or the protection afforded attorney work product. We conclude petitioner waived the attorney-client privilege and work product protection for documents shared with the government.

## BACKGROUND

On April 28, 1999, petitioner McKesson HBOC, Inc., (McKesson) publicly disclosed that its auditors had discovered improperly recorded revenues at McKesson's subsidiary, HBO & Company (HBOC). The disclosure led to shareholder lawsuits, some filed the same day as the disclosure, and investigations by the United States Attorney's Office (United States Attorney) and the Securities and Exchange Commission (SEC). The SEC opened a formal investigation by order dated July 19, 1999. The order stated the SEC was investigating whether McKesson, its present and former officers, directors, employees, predecessors, subsidiaries, or other persons or entities had committed securities fraud; filed untrue or misleading reports with the SEC; failed to keep accurate books, records and accounts; falsified books, records and accounts; misled McKesson's auditor; and failed to implement an adequate system of accounting controls.

McKesson retained the law firm of Skadden, Arps, Slate, Meagher & Flom LLP (Skadden) to represent it in the shareholder lawsuits and to perform an internal review of the matter. Skadden attorneys proceeded to interview 37 present and former McKesson or HBOC employees. The attorneys prepared an interview memorandum for each of the interviews (some employees were interviewed more than once). Skadden then prepared a report (the audit committee report), which it provided to McKesson on July 22, 1999.

During the course of the internal review, Skadden informed representatives of the United States Attorney and the SEC that McKesson was willing to disclose the results of Skadden's internal review to the government, subject to agreements designed to preserve the confidentiality of any materials given to the government. The United States Attorney and the SEC agreed to enter into such agreements.

The confidentiality agreements prepared by Skadden reflected McKesson's belief that the documents it was providing were protected by the attorney-client privilege and the work product doctrine. The agreements further stated that McKesson did not intend to waive those protections, and that McKesson believed it had a common interest with the government in obtaining information regarding the improperly recorded revenues. Although the United States Attorney and the SEC agreed to protect the confidentiality of the documents, the agreements did provide for disclosure under certain circumstances, including the prosecution of McKesson.[1] Specifically, the United States Attorney was permitted to disclose the documents "to a federal grand jury as the Office deems appropriate, and in any criminal prosecution that [might] result from the Office's investigation." With respect to the SEC, the documents were to be protected, "except to the extent that the [SEC] Staff determines that disclosure is otherwise required by federal law or in furtherance of the Commission's discharge of its duties and responsibilities."

Skadden provided copies of the audit committee report and the interview memoranda to the United States Attorney and the SEC in late July and early August 1999.

To date, the government has not taken any action against McKesson in connection with the improperly recorded revenues. In June 2001, SEC staff did notify McKesson of its intent to recommend enforcement proceedings against McKesson, but the SEC later notified McKesson, in January 2002, that it had terminated its investigation of McKesson with no enforcement action recommended against McKesson. The United States Attorney did file criminal charges against former HBOC executives.

Several civil actions against McKesson have been consolidated in respondent San Francisco Superior Court. Plaintiffs and real parties in interest Merrill Lynch Fundamental Growth Fund, Inc., and Merrill Lynch Global Value Fund, Inc., (collectively, Merrill Lynch) moved in the consolidated actions to compel McKesson to produce the audit committee report and the interview memoranda.[2] Merrill Lynch asserted McKesson had waived both the attorney-client privilege and attorney work product protection when it gave the documents to the government.

The trial court granted the motion to compel. The trial court found the audit committee report and the interview memoranda were subject to the

---

[1] The agreement with the United States Attorney, however, did provide: "Based on the information now known to the Office, the Office has represented that the Company is not a subject or a target or any criminal investigation currently being conducted by the Office."

[2] The motion was joined by plaintiffs and real parties in interest Oregon Public Employees Retirement Board, Minnesota State Board of Investment, Utah State Retirement Board, and Public Employees Retirement Association of Colorado.

attorney-client privilege (Evid. Code, § 912),[3] but that the privilege had been waived by sharing the documents with the government. The trial court stated: "The disclosure of the documents to the SEC and the [United States Attorney] was not 'reasonably necessary for the accomplishment of the purpose for which [Skadden] was consulted.' [Citing § 912, subd. (d).] McKesson HBOC retained Skadden to investigate the alleged fraud and to determine who was responsible. However, this purpose did not require disclosure of the Report to the SEC or the [United States Attorney]."

The trial court similarly found the documents were subject to the protection afforded attorney work product (Code Civ. Proc., § 2018, subd. (c)), but that McKesson had waived that protection by disclosing the documents to third parties who did not have an interest in preserving the confidentiality of the documents.

The trial court stayed its order so that McKesson could seek appellate review. McKesson has sought review by way of a petition for writ of mandate or prohibition. At the direction of our Supreme Court, we issued an order to show cause why the relief sought in the petition should not be granted. In addition to the return and other briefs filed by Merrill Lynch, we have received and considered briefs in support of the petition from the SEC and the Securities Industry Association.[4]

## DISCUSSION

### A. *Standard of Review*

The parties dispute the applicable standard of review. McKesson argues the underlying facts are undisputed; therefore this court should review the trial court's order de novo. (See *Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1095 [125 Cal.Rptr.2d 12] [application of Evid. Code provisions to undisputed facts presents a question of law].) Merrill Lynch asserts the trial court's order is reviewed under the abuse of discretion standard. (See *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 330–331 [87 Cal.Rptr.2d 813] [a discovery order is reviewed under the abuse of discretion standard].)

We find the waiver issue presents a mixed question of fact and law. "Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied." (*Crocker National*

---

[3] All further statutory references are to the Evidence Code unless otherwise noted.

[4] The court notes that all the briefs filed in this matter, both by the parties and amici curiae, were outstanding.

*Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].) As the historical facts are undisputed, the question is whether, given those historical facts, McKesson has waived the attorney-client privilege and attorney work product protection. That inquiry "requires a critical consideration, in a factual context, of legal principles and their underlying values." (*Ibid.*) Therefore, the question is predominately legal, and we independently review the trial court's decision. (See *Tennenbaum v. Deloitte & Touche* (1996) 77 F.3d 337, 340 [whether holder has waived right to claim attorney-client privilege is mixed question of law and fact reviewed de novo].)

## B. *Waiver of Attorney-client Privilege*

■ In California, the attorney-client privilege is a legislative creation. (See §§ 950–962.) The courts of this state have no power to expand it or to recognize implied exceptions. (*Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 206 [91 Cal.Rptr.2d 716, 990 P.2d 591]; see also § 911 [no privilege except as provided by statute].) The purpose of the privilege is to promote full and open discussion between clients and their attorneys. (*Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451, 457 [107 Cal.Rptr.2d 456].) Nevertheless, evidentiary privileges should be narrowly construed because they prevent the admission of relevant and otherwise admissible evidence. (*People v. Sinohui* (2002) 28 Cal.4th 205, 212 [120 Cal.Rptr.2d 783, 47 P.3d 629]; *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 396–397 [15 Cal.Rptr. 90, 364 P.2d 266].)

■ The attorney-client privilege may be waived. The Evidence Code provides the privilege "is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." (§ 912, subd. (a).)

■ There is no question that McKesson consented to disclosure of the audit committee report and interview memoranda to the government. McKesson, however, seeks refuge in subdivision (d) of section 912, which allows disclosure without waiving the attorney-client privilege "when disclosure is reasonably necessary for the accomplishment of the purpose" for which the lawyer was consulted.[5] "For example, where a confidential communication

---

[5] McKesson also relies on section 952, which contains similar language. Section 952 states a "confidential communication between client and lawyer" includes information disclosed to a third party so long as disclosure is made "to further the interest of the client in the consultation," or is "reasonably necessary for . . . the accomplishment of the purpose for which the lawyer is consulted." For purposes of the instant case, the analysis is the same regardless of whether one relies on section 952, or on subdivision (d) of section 912.

from a client is related by his attorney to a physician, appraiser, or other expert in order to obtain that person's assistance so that the attorney will better be able to advise his client, the disclosure is not a waiver of the privilege, even though the disclosure is made with the client's knowledge and consent." (Cal. Law Revision Com. com, Deering's Ann. Evid. Code (1986 ed.) foll. § 912, p. 75.)

According to McKesson, it retained Skadden "to provide legal advice to McKesson and its Audit Committee and to assist McKesson in civil litigation pending in state and federal court." We agree with the trial court that it was unnecessary to share the audit report or interview memoranda with the government to accomplish that assignment.

McKesson counters that providing the documents to the government furthered a common interest or purpose it shared with the government— investigating and rooting out the source of accounting improprieties at HBOC. But we read the Evidence Code (§§ 912 and 952) to permit sharing of privileged information when it furthers the attorney-client relationship; not simply when two or more parties might have overlapping interests. *Raytheon Co. v. Superior Court* (1989) 208 Cal.App.3d 683 [256 Cal.Rptr. 425] (*Raytheon*), a case McKesson cites, is instructive.

In *Raytheon*, the targets of a government investigation into toxic contamination of real property shared attorney-client materials (correspondence, memoranda, reports) with one another, ostensibly in a cooperative effort to remedy the problem. In civil litigation over the contamination, in which the targets were the defendants, the plaintiffs sought to compel production of the shared documents. The issue, as framed by the Court of Appeal, was whether adversaries (it was in the interest of the defendants to shift blame for the contamination) waive the attorney-client privilege and work product protection when they share otherwise privileged information. (*Raytheon, supra,* 208 Cal.App.3d at p. 686.) The answer, the court explained, depended on whether the disclosure was reasonably necessary to accomplish the purpose for which attorneys were consulted. (*Id.* at p. 688.)[6]

The *Raytheon* court did not decide whether the attorney-client privilege had been waived because it did not have an adequate record. It remanded the matter back to the trial court to develop the record and to decide the issue. (*Raytheon, supra,* 208 Cal.App.3d at pp. 688–689.) The *Raytheon* decision,

---

[6] The *Raytheon* court noted: "There appear to be no California cases considering whether common cooperation among defendants, for a purpose other than a common defense of the lawsuit, is a purpose for which the defense lawyers were consulted, within the statute, so that there is no waiver by mutual disclosure of work." (*Raytheon, supra,* 208 Cal.App.3d at p. 687.)

nevertheless, suggests the targets of a government investigation may share information *with each other* without waiving the attorney-client privilege if cooperation is reasonably necessary for counsel to provide representation in the investigation. In other words parties aligned on the same side in an investigation or litigation may, in some circumstances, share privileged documents without waiving the attorney-client privilege.

We see no real alignment of interests between the government and persons or entities under investigation for securities law violations. Even if we credit McKesson's claim that it was interested in rooting out the source of the accounting improprieties, we still find the situation here is not qualitatively different than a defendant's sharing privileged material with one plaintiff, but not another. Though McKesson and amici curiae advance policy arguments for allowing sharing of privileged materials with the government (see pt. C., *post*), no one suggests that a defendant facing multiple plaintiffs should be able to disclose privileged materials to one plaintiff without waiving the attorney-client privilege as to the other plaintiffs.

McKesson also cites *STI Outdoor v. Superior Court* (2001) 91 Cal.App.4th 334 [109 Cal.Rptr.2d 865] (*STI Outdoor*), a case in which the sharing of documents took place between parties negotiating a licensing agreement. Though not relevant to the ultimate holding of the case, one of the parties happened to be a government entity. A third party filed suit to force disclosure of certain documents generated during the negotiations, including documents protected by the attorney-client privilege. The Court of Appeal found no waiver of the attorney-client privilege as a result of the sharing of documents during the negotiations: "The evidence supports the contention that the disclosure of such documents was reasonably necessary to further the interests of both parties in finalizing negotiations for the license agreement." (*Id.* at p. 341.)

*STI Outdoor* is factually inapposite, and it does not provide any guidance here. The decision does not discuss the sharing of attorney-client materials in litigation or during a government investigation.

McKesson and real parties in interest developed an adequate record below, and the trial court applied the proper law. In our opinion, the trial court reached the right result. McKesson waived its attorney-client privilege with respect to the audit committee report and interview memoranda.

C. *Waiver of Work Product Protection*

██ The work product doctrine is codified in Code of Civil Procedure section 2018. Writings containing an attorney's impressions, conclusions, opinions, or legal research are absolutely protected. (Code Civ. Proc., § 2018,

subd. (c).)[7] " 'The sole exception to the literal wording of the statute which the cases have recognized is under the waiver doctrine[,] which has been held applicable to the work product rule as well as the attorney-client privilege.' " (*Wells Fargo Bank v. Superior Court, supra,* 22 Cal.4th at p. 214, quoting from *BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1254 [245 Cal.Rptr. 682].)

■ Waiver of work product protection, though not expressly defined by statute, is generally found under the same set of circumstances as waiver of the attorney-client privilege—by failing to assert the protection, by tendering certain issues, and by conduct inconsistent with claiming the protection. (See *BP Alaska Exploration, Inc. v. Superior Court, supra,* 199 Cal.App.3d at p. 1261; see also Code Civ. Proc., § 2025, subd. (m)(1) [work product protection waived unless specific objection is timely made during deposition].) Waiver also occurs by an attorney's "voluntary disclosure or consent to disclosure of the writing to a person other than the client who has no interest in maintaining the confidentiality of the contents of the writing." (*BP Alaska, supra,* at p. 1261.)

The trial court found McKesson and Skadden had disclosed the audit committee report and interview memoranda to third parties who did not have an interest in preserving the confidentiality of the documents. McKesson contends the United States Attorney and the SEC had an interest in maintaining the confidentiality of the audit committee report by reason of the confidentiality agreements. McKesson once again relies on *Raytheon* and *STI Outdoor* to support its contention, and it again asserts the government was not an adversary and had a common interest in rooting out the source of any accounting improprieties (citing *Armenta v. Superior Court* (2002) 101 Cal.App.4th 525, 534 [124 Cal.Rptr.2d 273] [parties with common interests may share confidential information without waiving applicable protections]).

■ McKesson's reliance on the agreements themselves to create a government interest in confidentiality seems to us to be bootstrapping. The government has no interest independent of the agreements to keep the information confidential. In simple terms, the SEC and United States Attorney agreed to keep the documents confidential if they did not need to disclose the documents' contents to perform their duties. The agreements did not bind the government to maintain confidentiality under all circumstances. More importantly, the SEC and the United States Attorney agreed to (conditional) confidentiality in order to obtain the documents. Their interest was not confidentiality, but instead to obtain the documents and thereby make their

---

[7] Code of Civil Procedure section 2018, subdivision (c) provides: "Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances."

investigations and possible enforcement actions easier and more productive. In contrast, an interest in maintaining confidentiality exists when the parties are aligned on the same side in the litigation and have a similar stake in the outcome. (See, e.g., *Armenta v. Superior Court, supra,* 101 Cal.App.4th at pp. 533–535 [joint prosecution agreement between qui tam plaintiff and government is effective to protect attorney work product developed and shared for their joint prosecution of a false claims action]; *Raytheon, supra,* 208 Cal.App.3d at p. 689 [work product protection may not be waived when codefendants share confidential materials in order to defend against government investigation].)[8] Thus, there is an interest in confidentiality when the parties' individual cases might be damaged if work product were to be disclosed.

McKesson and the government are not aligned in any litigation, and they do not share the same stake or have the same goal. There is considerable debate in the briefing before us as to whether disclosure of work product will make future targets of government investigations reluctant to cooperate in the future. Ultimately, it is only this policy argument mounted by McKesson and amici curiae that we find has some appeal.[9] As the Legislature has not explicitly set out the parameters for waiver of work product protection, we are, perhaps, slightly less constrained in determining the bounds of the doctrine.[10] Given the various incentives for cooperating with government investigations (see *In re Steinhardt Partners, L.P.* (2d Cir. 1993) 9 F.3d 230, 236), we are not sure if future investigative targets will be reluctant to share protected documents if we uphold the trial court's order. But an assurance of work product protection would certainly act as a carrot to encourage cooperation with the government. Also, the employment of outside counsel to investigate alleged corporate wrongdoing is a laudable practice, which presumably would be encouraged by an assurance of work product protection.

The Securities Industry Association, therefore, urges this court to adopt the "selective waiver" theory, under which a client could disclose a privileged or protected communication to the government, while continuing to assert it against other parties. (See *Westinghouse v. Republic of the Philippines* (3d Cir. 1991) 951 F.2d 1414, 1423, fn. 7.) There is a split of authority on the selective waiver theory in the federal courts. The positions for and against the theory are discussed at length in the majority and dissenting opinions in *In re*

---

[8] The *STI Outdoor* court considered only the attorney-client privilege; it did not discuss the work product doctrine. (See *STI Outdoor, supra,* 91 Cal.App.4th at pp. 339–341.)

[9] Merrill Lynch has questioned this policy, suggesting that it is inappropriate for the government to be engaged in gathering information by agreeing not to share it with shareholders who have been victimized.

[10] Both the SEC and the Securities Industry Association urge a finding of work product protection, without arguing the attorney-client privilege issue.

*Columbia/HCA Healthcare* (6th Cir. 2002) 293 F.3d 289.)[11] We will not repeat that discussion here, because we are persuaded by Merrill Lynch's argument that the selective waiver theory finds no support in the work product policies the Legislature has set forth in the Code of Civil Procedure. Section 2018, subdivision (a), provides: "It is the policy of the state to: (1) preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases; and (2) to prevent attorneys from taking undue advantage of their adversary's industry and efforts."

As Merrill Lynch points out, McKesson did not need to disclose the audit report and interview memoranda to prepare its case for trial, and McKesson's adversaries are not taking undue advantage of Skadden's efforts because the documents would have remained protected had not McKesson disclosed them to third parties.

Given the Legislature's expressed desire to control evidentiary privileges and protections, adoption of the selective waiver theory should come from that body. We agree with the trial court that under California law, McKesson waived the work product protection for the audit committee report and the interview memoranda.

## DISPOSITION

The order to show cause is discharged and the petition for writ of mandate or prohibition is denied. Merrill Lynch shall recover its costs. (Cal. Rules of Court, rule 56.4.)

Reardon, J., and Sepulveda, J., concurred.

A petition for a rehearing was denied March 19, 2004, and petitioner's petition for review by the Supreme Court was denied June 9, 2004. Kennard, J., did not participate therein.

---

[11] The debate is also reflected in decisions from a federal district court in California and a Delaware court involving the same facts before this court. The federal district court, in a case involving the criminal prosecution of former HBOC executives, rejected the selective waiver theory and found McKesson had waived work product protection by sharing the audit committee report and interview memoranda with the government. (*U.S. v. Bergonzi* (N.D. Cal. 2003) 216 F.R.D. 487, 496–497.) According to McKesson, it has appealed that ruling to the Ninth Circuit. The Delaware Court of Chancery, in an unpublished opinion, embraced the selective waiver theory, finding the confidentiality agreements with the SEC and the United States Attorney precluded the waiver of work product protection. (*Saito v. McKesson HBOC, Inc.* (Del. Ch. Nov. 13, 2002) 2002 Del.Ch.LEXIS 139 [2002 WL 31657622 at p. *11].) We are not the first court to consider this matter; nor is it likely we will be the last. (See also *McKesson HBOC, Inc. v. Adler* (2002) 254 Ga.App. 500 [562 S.E.2d 809].)