Filed 7/24/24  Martignetti v. Southern Cal. Healthcare System CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PAUL EDWARD MARTIGNETTI, Plaintiff and Respondent, v. SOUTHERN CALIFORNIA HEALTHCARE SYSTEM, INC., Defendant and Appellant. | B327194 (Los Angeles County Super. Ct. No. 20STCV18493) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Affirmed.

Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, Ekwan E. Rhow, Thomas R. Freeman, and Christopher J. Lee for Defendant and Appellant.

Levin and Nalbandyan, Akop J. Nalbandyan, and Charlene L. Nercess for Plaintiff and Respondent.

Paul Edward Martignetti (Martignetti) sued his former employer Southern California Healthcare System, Inc. (the "Hospital") for employment discrimination and wrongful termination. The parties then submitted Martignetti's claims to binding arbitration, and during the course of the arbitration, the arbitrator reviewed in camera documents the Hospital maintained were protected by the attorney-client privilege or the attorney work product doctrine. The arbitrator found only some of the documents were privileged and ultimately issued a final award in favor of Martignetti. The Hospital responded by petitioning to vacate the award on the ground that the arbitrator's in camera review of all the privileged documents was improper and influenced its final award. We consider whether the trial court's denial of the Hospital's petition was error, and we focus on whether the Hospital needed to have filed a written objection to in camera review during the arbitration to preserve the issue.

## I.  BACKGROUND

Martignetti is a licensed vocational nurse. On March 12, 2014, the Hospital hired Martignetti to work at its behavioral health facility in Culver City, California. On the day he was hired, Martignetti and the Hospital mutually agreed to arbitrate any claims arising out of his employment. Under the terms of their agreement, any such arbitration would be conducted in accordance with the JAMS Employment Arbitration Rules and Procedures (JAMS Rules).

Martignetti's position was a physically demanding one, as it involved treatment of some of the Hospital's most hostile and aggressive patients. In March 2014, December 2015, and

2

January 2019, Martignetti suffered injuries to his face, foot, and hand (respectively) while working for the Hospital. Following his third work-related injury, the Hospital informed Martignetti that he would need to find an alternative position and, in January 2020, the Hospital terminated Martignetti's employment.

Several months after being terminated, Martignetti sued the Hospital for employment discrimination and wrongful termination in violation of public policy. The parties subsequently stipulated to binding arbitration.

A. *The Arbitrator's In Camera Review and the Hospital's Response*

The governing JAMS Rules specify that, during arbitration, "[s]trict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product." (Rule No. 22(d).) In addition, the JAMS Rules provide that "[a]t any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause"—although any such challenge "must be in writing." (Rule No. 15(i).) Under a bolded heading entitled "Waiver," the JAMS Rules further state: "(a) If a Party becomes aware of a violation of or a failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship. [¶] (b) If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator." (Rule No. 27.)

From January 24-28 and February 3-4, 2022, the arbitrator held an evidentiary hearing on Martignetti's claims. On January 27, Lindsay Jones (Jones), the Hospital's former regional director of human resources, testified. During her testimony, Jones discussed internal email correspondence regarding Martignetti's termination, some of which had not been produced by the Hospital during discovery. The arbitrator ordered those documents produced and, following a break in the proceedings, the Hospital produced copies of four emails.

As her testimony proceeded, Jones described a report prepared in connection with Martignetti's termination. The report, called a "termination summary" or "summary for legal," was prepared consistent with the human resources department's practice of preparing such reports whenever termination of a worker's employment was being considered. The report summarized for the Hospital's in-house counsel the facts and circumstances relevant to the proposed termination.

Following Jones's testimony about the termination summary report, the arbitrator spoke with counsel off the record. Counsel for the Hospital explained the termination summary and communications related thereto had not been produced because they were created as part of a process mandated by the Hospital's legal department and, as such, were protected from discovery by the attorney-client privilege or the attorney work product doctrine.

After the parties' counsel confirmed that the Hospital had not produced a privilege log, the arbitrator reviewed the termination summary and related communications in camera. Following the in camera review, the arbitrator explained that resolving whether some of the documents at issue were privileged

4

required briefing from the parties and the arbitrator set a briefing schedule. Before adjourning the hearing for the day, the arbitrator asked the parties if there was anything they wished to put on the record; the Hospital did not make any statements or lodge any objections about the in camera review.

Four days later, the Hospital served the brief requested by the arbitrator concerning its privilege claims. In addition to the termination summary report, the Hospital identified in its brief and accompanying privilege log six chains of email correspondence that fell into two categories: (1) communications between members of the human resources department and a supervisor regarding preparation of and revisions to the termination summary report; and (2) communications between in-house counsel and Hospital employees regarding Martignetti's termination. Because it believed the second category was "clearly privileged," the Hospital focused its brief on the chains of emails exchanged solely between its human resource professionals.

The Hospital argued those communications were protected by the attorney-client privilege because the dominant purpose underlying each communication was to transmit information to in-house attorneys and obtain legal guidance. The Hospital also argued the communications were protected by the attorney work product doctrine because the work by the human resource staffers on the termination summary was performed at the request of a Hospital attorney in anticipation of litigation. In support, the Hospital submitted a declaration by one of its in-house labor lawyers describing its longstanding and mandatory process for securing legal review of proposed termination

decisions.[1]  The Hospital's brief did not discuss or object to the arbitrator's in camera review.

In February 2022, the arbitrator held a hearing on the Hospital's privilege claims.  The arbitrator stated she had reviewed the parties' submissions and the cases cited therein but did not review the actual documents listed on the privilege log. She explained that JAMS follows the rules of evidence for attorney-client and work product privilege determinations and, under California law, while an in camera review is proper for claims of protection under the attorney work product doctrine, such a review is not appropriate for documents claimed to be protected by the attorney-client privilege.  When the Hospital's counsel reminded the arbitrator that she had "briefly" examined all of the documents during her earlier in camera review, the arbitrator responded the emails "weren't read"; she only looked to see "who they were between."[2]  When the arbitrator asked the parties if they had any objection to how the arbitration hearing had been conducted thus far, counsel for the Hospital described the arbitrator's in camera review of the documents as a "little

---

[1]     While the transcript from the hearing on the Hospital's privilege claims and other documents indicate Martignetti submitted a brief on the issue, no such brief was included in the record on appeal.

[2]     The arbitrator also acknowledged at the hearing that she was shown "the one template that had yes/no questions or had a template that legal prepared to tell me that [document] was, you know, clearly privileged."

6

dicey" and possibly not in "technical[ ]" compliance with Evidence Code section 915, but did not raise any other complaints.[3]

Ultimately, the arbitrator found there were two processes at work in connection with Martignetti's termination: one required to secure the approval of the human resources department and the other to secure the approval of the Hospital's legal department.  The arbitrator ruled that only the three email threads solely between members of the Hospital's human

---

[3]    "Evidence Code section 915 provides . . . that 'the presiding officer may not require disclosure of information claimed to be privileged under th[e attorney-client privilege] . . . in order to rule on the claim of privilege. . . .' (Evid. Code, § 915, subd. (a).) Section 915 also prohibits disclosure of information claimed to be privileged work product . . . , but, as to the work product privilege, if the court is unable to rule on the claim of privilege 'without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and any other persons as the person authorized to claim the privilege is willing to have present.' (Evid. Code, § 915, subd. (b).)" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 736, footnote omitted.) "[N]othing in Evidence Code section 915[, however,] prevents a party claiming a privilege from making an in camera disclosure of the content of a communication to respond to an argument or tentative decision that the communication is not privileged." (*Id.* at 738-740 ["The corporation . . . was free to *request* an in camera review of the communications to aid the trial court in making that determination, but the trial court could not *order* disclosure of the information over the corporation's objection"].)

resources staff were not privileged and, accordingly, would be marked as exhibits and admitted into evidence.

In a final award issued in June 2022, the arbitrator found in Martignetti's favor and awarded him a total of $3.4 million in economic damages, noneconomic damages, interest, attorney fees, and costs. In the final award, the arbitrator discussed the privileged document issue and stated that she had not reviewed the content of the emails during the in camera review.

### B. The Trial Court Denies the Hospital's Petition to Vacate the Award

Back in the trial court, Martignetti moved to confirm the Final Award and the Hospital petitioned to vacate it. As relevant here, the Hospital argued vacatur was warranted because the arbitrator exceeded her powers by conducting an in camera inspection of documents protected by the attorney-client privilege. The Hospital maintained the arbitrator's in camera review was an "egregious" invasion of the attorney-client privilege, which left the Hospital with "no recourse" during the arbitration.

In a supporting declaration, the Hospital's lead attorney during the arbitration stated that on January 27, after the arbitrator went off the record, she "demanded" that he provide the documents to her immediately despite his objection that they were privileged. The Hospital's attorney added that, during the in camera review, it appeared the arbitrator reviewed the documents "closely" and remarked she had a "lot of questions" (or words to that effect) after she completed her review. The Hospital's attorney further declared it was his "strong

recollection" that the arbitrator never returned the privileged documents he had provided to her for in camera review.

Martignetti opposed the Hospital's petition to vacate and asked the trial court to take judicial notice of the JAMS Rules. Supported by declarations by the attorneys who represented him at the arbitration, Martignetti maintained the arbitrator did not demand to review the purportedly privileged documents; rather, the Hospital's attorney "voluntarily" showed the purportedly privileged documents to the arbitrator. Martignetti also emphasized that the Hospital made no contemporaneous objection to the arbitrator's in camera review, nor did it object in its later-filed privilege brief or at the hearing on the privilege issue. In addition, Martignetti contended the Hospital failed to mention or object to the arbitrator's handling of the privileged document issue in its closing post-arbitration brief or reply brief.

In reply, the Hospital argued that its objection to producing the pertinent documents on privilege grounds sufficed to preserve its right to challenge the arbitrator's in camera review of those documents. The Hospital also contended it did not object to the in camera review in its subsequently filed brief because "that briefing pertained solely to whether the underlying documents were privileged and had nothing to do with the Arbitrator's violation of [Evidence Code] Section 915." The Hospital further argued it had been irreparably prejudiced by the in camera review because that review "infected" the merits of the final award.[4]

---

[4] In a supplemental declaration, the Hospital's lead attorney rejected the assertion he voluntarily provided assertedly privileged materials to the arbitrator; he understood the

9

At the hearing on the cross petitions to confirm and vacate the arbitration award, Martignetti emphasized the Hospital could have moved to disqualify the arbitrator pursuant to JAMS Rule Nos. 15 and 27. Because the Hospital failed to exercise its rights under the JAMS Rules, Martignetti argued the petition to vacate should be denied.

In response, the Hospital maintained that disqualification under JAMS Rule Nos. 15 and 27 was appropriate only for undisclosed conflicts of interest, and that, in any event, an attempt to disqualify an arbitrator in the midst of an arbitration for misapplying the privilege laws "simply [wa]sn't realistic." The Hospital maintained that "once an arbitrator violates [Evidence Code] Section 915 and is contaminated by privileged information, a party has no recourse other than to wait for the award, to move to vacate, and to seek a rehearing with an arbitrator that has not been contaminated by [privileged] information."

After the hearing, the trial court issued an order granting the motion to confirm the arbitration award and denying the petition to vacate it. The court found that while the Hospital should probably have been "more direct" with its oral objections to the in camera review at the privilege hearing, it did not waive the issue.[5] Although it did not find waiver, the court did find the

arbitrator's request to review the documents in camera to be "an order."

[5]     Although the trial court judicially noticed the JAMS Rules, it did not discuss or reference any of those rules in finding the Hospital did not waive its challenge to the final award based on the in camera review.

10

Hospital had not demonstrated the arbitrator exceeded her powers or that the final award was procured by undue means.

## II. DISCUSSION

The Hospital maintains the arbitrator's in camera review presented it with the "untenable" choice of either "waiving the privilege violation" or "risking arbitrator backlash at the critical moment in the arbitration" if its request for disqualification was ultimately denied. Because it believes that seeking disqualification under JAMS Rule 27 was a "strategically risky" course of action in the midst of an arbitration, the Hospital contends it cannot be held to have waived its challenge to the arbitrator's in camera review.

That is incorrect.[6] Established law and the JAMS Rules require a party who becomes aware of grounds to disqualify an arbitrator to promptly make a motion to disqualify or waive the issue. The Hospital had ample opportunity at the time of the in camera review, at the hearing on the privilege issue (and in the associated briefing it filed), and before the close of evidence at the arbitration to seek in writing the arbitrator's disqualification for what it believed was a violation of rules governing resolution of attorney-client and attorney work product privilege disputes. At each step, however, the Hospital refrained from objecting; the objection only came later, once the Hospital learned that the arbitrator would rule against it. That, rather obviously, is too

---

[6]     "'[W]e are not bound by the trial court's stated reasons for its ruling . . . as we only review the ruling and not its rationale.'" (*Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 744.)

late.  We shall elaborate, but the bottom line is that the point is waived and the trial court's rulings will be affirmed accordingly.

Our Supreme Court has held that a party to an arbitration may not "sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award.  A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration.' [Citation.]"  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30.) Other precedent is to the same effect.  "'The forfeiture rule exists to avoid the waste of scarce dispute resolution resources, and to thwart game-playing litigants who would conceal an ace up their sleeves for use in the event of an adverse outcome. . . . Those who are aware of a basis for finding the arbitration process invalid must raise it at the outset or as soon as they learn of it so that prompt judicial resolution may take place before wasting the time of the adjudicator(s) and the parties . . . . [A] party who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid is properly cast into the outer darkness of forfeiture.' [Citation.]"  (*ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 906; accord, *Goodwin v. Comerica Bank, N.A.* (2021) 72 Cal.App.5th 858, 868 ["the basic principle [in arbitration is] that a party who learns of a ground for disqualification must either raise it promptly or forfeit it"]; *Alper v. Rotella* (2021) 63 Cal.App.5th 1142, 1152-1153 [a party ""cannot passively reserve [an] issue for consideration after the arbitration has concluded""]; *Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 926, 927, [a party who learns of a basis to disqualify an arbitrator cannot "wait and see how the arbitration turn[s] out before raising the[ ]

issue[ ]," because such conduct would allow the party to """play games' with the arbitration and not raise the issue" until [they] los[e]"].)

Under the JAMS Rules the Hospital agreed to, the arbitrator was required to apply California law relating to privileges and work product (JAMS Rule No. 22(d)). Under those same rules, if the Hospital discovered what it believed to be a failure by the arbitrator to comply with California privilege law or cause to challenge the continued service of the arbitrator, it faced a choice: promptly object in writing or waive the issue (JAMS Rule Nos. 15(i) & 27).

Although the Hospital objected promptly to producing the purportedly privileged documents, there is no evidence it objected with the requisite written specificity to the arbitrator's review of the assertedly privileged materials in camera.[7] The JAMS Rules require such an objection. (JAMS Rule No. 15(i) [a party may challenge the continued service of the arbitrator for cause but the challenge "must be in writing"]; JAMS Rule No. 27 ["(a) If a Party becomes aware of a violation of or a failure to comply with these

---

[7] The record of the arbitration proceedings also reveals the Hospital did not orally object to the in camera review either immediately before or after it occurred. At most, the record reveals counsel for the Hospital verbally expressed concern with the in camera review during the later privilege hearing. To resolve this appeal, we need not decide whether this expression of concern constitutes a proper objection because the JAMS Rules require any such objection to be in writing. The parties also dispute whether the submission of the documents to the arbitrator was voluntary, but we likewise need not resolve that dispute to decide this appeal.

Rules and fails promptly to object in writing, the objection will be deemed waived . . . . [¶] (b) If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator"].) There being no written objection to the arbitrator's in camera review or her continued service thereafter—at least up until the arbitrator issued an award in Martignetti's favor—the issue is waived and the arbitration award was rightly confirmed.[8] (See, e.g., *ECC Capital Corp.*, *supra*, 9 Cal.App.5th at 906; *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 353-354.)

---

[8] The Hospital argues we should not hold the issue forfeited or waived because it did not have an opportunity in the trial court to develop evidence that might affect a determination of whether there was a waiver. We have reviewed the Hospital's recitation of evidence it might have developed and none would affect our holding that the issue is waived. In addition, the existence vel non of waiver is at best a mixed question of law and fact on this record (see, e.g., *California-American Water Co. v. Marina Coast Water Dist.* (2022) 86 Cal.App.5th 1272, 1298, fn. 10; *McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1235), and our holding does not disturb any factual findings made by the trial court that are supported by substantial evidence.

DISPOSITION

The judgment is affirmed.  Martignetti is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

LEE, J.[*]

_____

[*]     Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15