Filed 3/14/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NICHOLAS BEHUNIN,<br><br>  Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>  Respondent;<br><br>CHARLES R. SCHWAB et al.,<br><br>  Real Parties in Interest. | B272225<br><br>(Los Angeles County Super. Ct. Nos. BC573709 and BC574505) |

ORIGINAL PROCEEDING in mandate. John P. Doyle, Judge. Petition denied.

Harder Mirell & Abrams, Douglas E. Mirell; Elkin Gamboa & Ashkinadze and Regina Ashkinadze for Petitioner.

No appearance for Respondent.

Allen Matkins Leck Gamble Mallory & Natsis and Robert Moore for Real Party in Interest Charles R. Schwab.

Law Offices of David H. Schwartz, Inc., David H. Schwartz; Law Offices of Michael Stepanian and Michael Stepanian for Real Party in Interest Michael Schwab.

# INTRODUCTION

This action arises out of a lawsuit by Nicholas Behunin against Charles Schwab and his son Michael Schwab over an unsuccessful real estate investment deal. As part of a plan to induce the Schwabs to settle the lawsuit, Behunin's attorneys, Leonard Steiner and Steiner & Libo, engaged a public relations consultant, Levick Strategic Communications, to create a website containing information linking the Schwabs and their real estate investments in Indonesia to the family of former Indonesian dictator Suharto. In Charles Schwab's subsequent action against Behunin for libel and Michael Schwab's subsequent action against Behunin for libel, slander, and invasion of privacy, Behunin filed a special motion to strike under Code of Civil Procedure section 425.16. In response to that motion, the Schwabs sought discovery of communications among Behunin, Steiner, and Levick relating to the creation of the website and its contents. Behunin objected, claiming the communications were protected from disclosure by the attorney-client privilege.

The questions in this proceeding are whether the communications among Behunin, Steiner, and Levick were confidential, attorney-client privileged communications and whether disclosure to Levick waived the privilege. We conclude that, although in some circumstances the attorney-client privilege may extend to communications with a public relations consultant, it did not do so in this case because Behunin failed to prove the disclosure of the communications to Levick was reasonably necessary for Steiner's representation of Behunin in his lawsuit against the Schwabs. Therefore, we deny Behunin's petition for a writ of mandate.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Behunin's Lawsuit Against the Schwabs*

Behunin, represented by Steiner, filed an action against the Schwabs relating to a business dispute over the creation and funding of a company called Sealutions, which Behunin and a business partner formed "to pursue environmentally conscious real estate investment and development," and a related real estate investment fund. Behunin alleged that to help establish the fund he and Michael Schwab pursued a relationship with the family of Suharto. Behunin asserted various causes of action, including fraud and breach of contract, relating to the Schwabs' purported promises to fund Sealutions. Behunin also described the details of the Schwabs' alleged relationship with members of the Suharto family.

After filing the Sealutions lawsuit, Steiner hired Levick to create a social media campaign to induce the Schwabs to settle the case. As part of this strategy, Levick created a website, www.chuck-you.com, linking the Schwabs to corruption, human rights violations, and atrocities associated with Suharto and his family. In a letter to Steiner and Behunin, a senior vice president at Levick stated: "Per our discussion with your client, Nicholas Behunin, LEVICK's goal will be to develop and deploy strategy and tactics of Mr. Behunin's legal complaint." The rest of the letter is redacted.[1]

---

[1] The record contains an unredacted version of what appears to be a different draft of the same letter. The unredacted version outlines the work Levick was going to perform, provides Levick's fee structure, and notes that all of Levick's work product,

According to Behunin, "Steiner played no role in the creation or publication of [the chuck-you.com website]. . . . [T]hat website and the content contained in the website were created by me and a public relations firm with which I was working. Steiner's only role was, at my specific request, to enter into a contract on my behalf with that public relations firm in connection with the prosecution of the [Sealutions action]. . . . Steiner merely acted as a liaison between myself and the public relations firm without knowledge of or connection to the substance of the website. The website always has been and remains my sole and exclusive property." Behunin also stated in a subsequent declaration the parties intended that all communications among Behunin, Steiner, and Levick would be protected by the attorney-client privilege and "all documents prepared on [Behunin's] behalf would be protected by the work-product privilege unless and until they entered the public domain."

B.   *The Schwabs' Defamation Actions Against Behunin and Steiner*

The Schwabs each filed an action against Behunin and Steiner. Charles Schwab asserted a cause of action for libel and alleged Steiner created and registered the "chuck-you.com" website. Charles Schwab further alleged he is informally known as Chuck, and the name of the website is a play on the words "fuck you." Charles Schwab also alleged the website "stole the design and format of Charles Schwab & Co., Inc.'s investment services website 'www.schwab.com' and then replaced its content

including the website, "shall be the sole and exclusive property of Behunin."

with numerous false, misleading, and libelous statements about [Charles] Schwab. The entire Website was dedicated to trying to smear [Charles] Schwab's reputation by falsely associating him with infamous Indonesian dictator Suharto and the atrocities committed by his regime."

Michael Schwab asserted causes of action for libel, slander, and invasion of privacy and alleged the statements on the website "attempted to smear [him] by associating him with Tommy Suharto, a son of the former Indonesian dictator [who] also has been linked to corrupt activities and is a convicted murderer." Michael Schwab further alleged the website falsely suggested the Schwabs were doing business with the dictatorial regime in Indonesia through the surviving members of Suharto's family, some of whom have been convicted of murder, bribery, and seizing land by force.

> C.    *Behunin's Special Motion To Strike the Schwabs' Complaints, the Court's Discovery Order, and the Ensuing Discovery Dispute*

Behunin filed a special motion to strike the Schwabs' defamation complaints under Code of Civil Procedure section 425.16. He argued the purpose of the Schwabs' lawsuits was to inhibit his constitutionally-protected petitioning activity of filing the Sealutions lawsuit against the Schwabs. Behunin's supporting declaration provided the details of extensive communications among Behunin, Michael Schwab, Charles Schwab, and various members of the Suharto family.

In response to the special motion to strike, the Schwabs filed motions for limited discovery under Civil Procedure Code

section 425.16, subdivision (g),[2] seeking to take discovery on the malice element of their defamation causes of action in connection with the statements on the website. The Schwabs sought to depose and obtain documents from Steiner, Behunin, and Levick regarding communications among the three of them relating to the website.

The trial court ruled the Schwabs were entitled to some of the discovery they sought in order to oppose the special motion to strike. In particular, the court allowed Michael Schwab to serve a set of requests for production of documents on Steiner & Libo, a subpoena for a deposition and documents on Levick, and a business records subpoena on Bruce Fein, an attorney in Washington, D.C.[3] The court gave Charles Schwab permission to depose Steiner and Behunin and serve a subpoena for documents on Levick. The court limited the discovery to whether Behunin and Steiner published the statements on the website and, if so, whether they published the statements with malice.

The Schwabs served discovery they believed the court gave them permission to serve. Charles Schwab served Behunin with 33 document requests regarding the website and communications among Behunin, Steiner, and Levick. He also served a subpoena

[2]     Code of Civil Procedure section 425.16, subdivision (g), provides: "All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. . . . The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision."

[3]     The Schwabs alleged that www.chuck-you.com contained links to other websites, including one operated by Fein, who writes a blog for the Huffington Post.

6

on Levick for documents regarding the creation and publication of the website and its content. Michael Schwab served document requests regarding communications among Behunin, Steiner, Steiner & Libo, and Levick relating to the website or any of the entities involved in the Sealutions litigation. He also served a deposition subpoena on Levick with document requests regarding communications among Levick, Behunin, Steiner, and Bruce Fein concerning the website, Sealutions, and two apparently related entities, Seathos and Emergent Indonesia Opportunity Fund.

Behunin and Steiner objected to the discovery on the grounds the requests exceeded the scope of the order authorizing discovery under Code of Civil Procedure section 425.16, subdivision (g), and sought documents protected from disclosure by the attorney-client privilege and work product doctrine. Behunin and Steiner also provided extensive privilege logs.

The parties filed competing discovery motions. Steiner and Behunin moved for a protective order, arguing they intended all communications with Levick to be protected by the attorney-client privilege and work product doctrine, and claiming Steiner engaged Levick to create and execute legal strategies and tactics relating to Behunin's litigation. The Schwabs filed motions to compel the production of documents from Behunin and Steiner.

The trial court referred the motions to a discovery referee, who summarized the disputed document requests as follows:

Request for Production No. 1: All documents relating to communications between you[4] and any employee or agent of the

---

[4] These requests are from Michael Schwab's document requests to Steiner & Libo, which define "you" as Steiner & Libo, its partners, agents, employees, representatives, and all persons acting on its behalf.

7

public relations firm Levick and related to Michael Schwab;

Request for Production No. 2: All documents relating to communications between you and any employee or agent of the public relations firm Levick and related to Nicholas Behunin;

Request for Production No. 3: All documents relating to communications between you and any employee or agent of the public relations firm Levick and related to the "chuck-you.com" website;

Request for Production No. 5: All documents relating to communications between you and any employee or agent of the public relations firm Levick and related to Sealutions, LLC;

Request for Production No. 6: All documents relating to communications between you and any employee or agent of the public relations firm Levick and related to Seathos, Inc.; and

Request for Production No. 7: All documents relating to communications between you and any employee or agent of the public relations firm Levick and related to Emergent Indonesia Opportunity Fund.

In a 34-page document that summarized the parties' positions and included findings and recommendations, the discovery referee determined the documents the Schwabs sought from Levick and Steiner were not protected by the attorney-client privilege or work product doctrine. The referee stated: "Based on the evidence provided by [Behunin and Steiner] as of this date, it is unclear whether Levick actively participated in developing and employing strategy in connection with the Sealutions litigation or was hired for the sole purpose of creating the chuck-you[.]com website and its content. The Referee will, out of an abundance of caution, hold an evidentiary hearing in camera to determine whether Steiner [and Behunin] can satisfy their prima facie

burden that their communications with Levick were for the purposes of giving or receiving advice directed at handling the prosecution of [Behunin's] legal action. The moving papers do not meet that burden."

Steiner and Behunin submitted 21 documents to the referee for in camera review. After reviewing the documents, the referee confirmed his final recommendation was consistent with his initial conclusion. Behunin and Steiner objected in the trial court to the discovery referee's recommendations.

The trial court overruled the objections by Behunin and Steiner to the discovery referee's report and adopted the referee's recommendations. The court ordered Levick to be deposed and to produce responsive documents, including his communications with Steiner and Behunin. The court also ordered Behunin and Steiner to produce the documents responsive to Michael Schwab's document requests. Regarding the 21 documents submitted to the discovery referee for in camera review, the trial court ruled that Behunin and Steiner had to produce document Nos. 1-11 because they were communications in which Levick participated, but Behunin and Steiner did not have to produce document Nos. 12-19 because these were communications solely between Steiner and Behunin.[5] Behunin produced some documents, but refused

_____

[5]     Behunin misinterprets the court's order in this regard. Behunin asserts the court ordered him and Steiner to produce documents that were "exclusively between attorney Steiner and [Behunin], which were submitted for the referee's in camera review." In fact, the court's April 20, 2016 order states that "[b]ased on [Behunin's and Steiner's] representations that Documents 12-19 constituted communications solely between Leonard Steiner and his clients and were not communicated to Levick Strategic Communications, and based upon the Court's

9

to produce others, including documents in the possession of Levick and Steiner that Behunin still claimed were protected from disclosure by the attorney-client privilege.

Behunin filed a petition for writ of mandate and requested an immediate stay of the trial court's orders.  We issued an order to show cause why we should not compel the trial court to vacate its orders, and stayed all discovery proceedings pending the disposition of this proceeding.

## DISCUSSION

A.     *Standard of Review*

"'The appellate court may entertain a petition for extraordinary relief when compulsion to answer a discovery order would violate a privilege.'" (*Fireman's Fund Ins. Co. v. Superior Court* (2011) 196 Cal.App.4th 1263, 1272; see *Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1493.)  In general, "[a] trial court's determination of a motion to compel discovery is reviewed for abuse of discretion." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733; see *Kirchmeyer v. Phillips* (2016) 245 Cal.App.4th 1394, 1402; *Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.)  "We review the trial court's privilege determination under the substantial evidence standard.  ""When the facts, or

---

limited review of those documents, the Court finds that Documents 12-19 are not apparently responsive to the subpoena or to the Request for Production and that Documents 12-19 need not be produced at this time, nor at any time necessarily, pending further proceedings thereon, which the court neither urges nor suggests."

10

reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it [citations].'" [Citation.] Accordingly, unless a claimed privilege appears as a matter of law from the undisputed facts, an appellate court may not overturn the trial court's decision to reject that claim.'" (*Roman Catholic Archbishop of Los Angeles v. Superior Court* (2005) 131 Cal.App.4th 417, 442-443.)

Whether a party has waived a privilege, however, is often a mixed question of law and fact. "'Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied.' [Citation.] As the historical facts are undisputed, the question is whether, given those historical facts, [a party] has waived the attorney-client privilege and attorney work product protection. That inquiry 'requires a critical consideration, in a factual context, of legal principles and their underlying values.' . . . Therefore, the question is predominately legal, and we independently review the trial court's decision." (*McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1235-1236; see *City of Petaluma v. Superior Court* (2016) 248 Cal.App.4th 1023, 1031.)

B.     *Applicable Law*

Evidence Code section 954 provides: "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication

11

between client and lawyer . . . ."[6]  (See *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 116 ["[t]he attorney-client privilege protects confidential communications between a client and his or her attorney made in the course of an attorney-client relationship"].)   "[T]he attorney-client privilege applies only to confidential communications."  (*Anten v. Superior Court* (2015) 233 Cal.App.4th 1254, 1260, fn. 6; see *Catalina Island Yacht Club v. Superior Court* (2015) 242 Cal.App.4th 1116, 1129, fn. 5 ["the attorney-client privilege attaches only to confidential communication made in the course of or for the purposes of facilitating the attorney-client relationship"]; *Benge v. Superior Court* (1982) 131 Cal.App.3d 336, 346 ["[t]he privilege includes only confidential communications"].)

Section 952 defines a confidential attorney-client communication:  "[A] 'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."

Section 912, subdivision (d), similarly addresses whether disclosure of an attorney-client communication to a third person waives the privilege:  "A disclosure in confidence of a

---

[6]     Undesignated statutory references are to the Evidence Code.

12

communication that is protected by a privilege provided by Section 954 (lawyer-client privilege) . . . , when disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted, is not a waiver of the privilege." For the purpose of this case, analysis of whether disclosure was "reasonably necessary" within the meaning of sections 954 and 912, subdivision (d), is the same. (See *McKesson HBOC, Inc. v. Superior Court, supra,* 115 Cal.App.4th at p. 1236, fn. 5 [the analysis under section 952 of whether information disclosed to a third party is made "to further the interest of the client in the consultation" and the analysis under section 912, subdivision (d), of whether information disclosed to a third party is "reasonably necessary for . . . the accomplishment of the purpose for which the lawyer is consulted" is essentially the same]; *First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.* (N.D.Cal. 1995) 163 F.R.D. 574, 581 [California courts have resolved privilege issues involving third parties with the "concept that is common to both sections 912 and 952 . . . that the privilege can continue to attach to communications that are disclosed in confidence to third persons *when that disclosure is reasonably necessary to achieve the ends for which the lawyer is being consulted*"].)

The involvement of a third party changes the burden of proof in litigating attorney-client privilege issues. "Generally, '[t]he burden of establishing that a particular matter is privileged is on the party asserting the privilege.' [Citation.] There is an exception: 'Whenever a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in the course of the lawyer-client . . . relationship, the communication is presumed to have been made in confidence and the opponent of

13

the claim of privilege has the burden of proof to establish that the communication was not confidential.'" (*Sony Computer Entertainment America, Inc. v. Great American Ins. Co.* (N.D.Cal. 2005) 229 F.R.D. 632, 633-634 (*Sony*); see § 917, subd. (a); *Costco Wholesale Corp. v. Superior Court*, *supra*, 47 Cal.4th at p. 733 ["[o]nce [a] party establishes facts necessary to support a prima facie claim of privilege [i.e., communication made in the course of attorney-client relationship], the communication is presumed to have been made in confidence"].)

This "exception to the normal allocation of burden is lost, however, when the communication is disclosed to a third party. . . . Where a third party is present, no presumption of confidentiality obtains, and the usual allocation of burden of proof, resting with the proponent of the privilege, applies in determining whether confidentiality was preserved under § 952." (*Sony*, *supra*, 229 F.R.D. at p. 634; see *Raytheon Co. v. Superior Court* (1989) 208 Cal.App.3d 683, 688 ["the presence of third parties does not destroy confidentiality *if* the disclosure was reasonably necessary to accomplish the client's purpose in consulting counsel"], italics added.) "It is appropriate that the proponent of the privilege has the burden of proving that a third party was present to further the interest of the proponent because, in this situation, where the privilege turns on the nature of the relationship and content of communications with the third party in question, the proponent is in the better posture to come forward with specific evidence explaining why confidentiality was not broken." (*Sony,* at p. 634, fn. 1.) In other words, the opponent of the party claiming the privilege under section 952 "cannot demonstrate that each communication between [the party claiming the privilege and a third party] was *not*

14

reasonably necessary to accomplish the purpose for which a lawyer was consulted" because, "[a]s a practical matter, it is impossible to know whether any of the disclosures of purportedly privileged information . . . were reasonably necessary to accomplish the purpose for which a lawyer was consulted without knowing in at least a general sense the communication's content." (*OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 895.)

> C.   *Behunin Failed To Prove the Communications Among Him, Steiner, and Levick Were Reasonably Necessary for Steiner's Representation of Him in the Sealutions Litigation*

There is no "public relations privilege" in California, and the courts cannot create one. (See *Seahaus La Jolla Owners Assn. v. Superior Court* (2014) 224 Cal.App.4th 754, 766-767 ["'[t]he privileges set out in the Evidence Code are legislative creations; the courts of this state have no power to expand them'"]; *Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 912 ["we are forbidden to create privileges or establish exceptions to privileges through case-by-case decisionmaking"].) Therefore, whether communications among a client, his or her attorney, and a public relations consultant are protected by the attorney-client privilege depends on whether the communications were confidential and whether disclosing them to the consultant was reasonably necessary to accomplish the purpose for which the client consulted the attorney. (See §§ 912, subd. (d), 952; *Seahaus La Jolla Owners Assn.*, at p. 766.)

In *Citizens for Ceres, supra,* 217 Cal.App.4th 889, the court explained there are two ways disclosure of a privileged communication to a third party may not destroy the privileged

15

nature of the communication under section 912, subdivision (d), and section 952: "The first is where the third party has no interest of his or her own in the matter, but a litigant must disclose a confidential communication to the third party because the third party is an agent or assistant who will help to advance the litigant's interests. This is the category the Law Revision Commission described in commenting on Evidence Code section 912, subdivision (d) . . . . [¶] . . . 'For example, where a confidential communication from a client is related by his attorney to a physician, appraiser, or other expert in order to obtain that person's assistance so that the attorney will better be able to advise his client, the disclosure is not a waiver of the privilege, even though the disclosure is made with the client's knowledge and consent.'" (*Citizens for Ceres,* at pp. 915-916.)

"The second category is where the third party is not in any sense an agent of the litigant or attorney but is a person with interests of his or her own to advance in the matter, interests that are in some way aligned with those of the litigant. . . . 'The words [in section 952] "other than those who are present to further the interest of the client in the consultation" indicate that a communication to a lawyer is nonetheless confidential even though it is made in the presence of another person—such as a spouse, parent, business associate, or joint client—who is present to further the interest of the client in the consultation. These words refer, too, to another person and his attorney who may meet with the client and his attorney in regard to a matter of joint concern.' [Citation.] [¶] It is this last notion, 'joint concern,' that is the basis of the common-interest doctrine. . . . [I]n limited situations, the alignment of the parties' common interests may mean disclosures between them are reasonably necessary to

16

accomplish the purposes for which they are consulting counsel." (*Citizens for Ceres, supra,* 217 Cal.App.4th at p. 916.)  The communications by Behunin and Steiner with Levick do not fall into either of these two categories.

> 1. *Levick Was Not Someone to Whom Disclosure Was Reasonably Necessary To Accomplish the Purpose for Which Behunin Retained Steiner*

Behunin argues, "As a third party litigation consultant, Levick must be treated in the same manner as any other third party intermediary engaged to further litigation objectives, just like an expert or consultant who aids an attorney in litigation and who performs litigation-related work."  For disclosure of communications by Steiner or Behunin to Levick to be protected by the attorney-client privilege under section 952 and section 912, subdivision (d), however, the disclosure must have been reasonably necessary for the accomplishment of the purpose for which Behunin consulted Steiner to represent him in the Sealutions litigation.  (See, e.g., *Sony, supra,* 229 F.R.D. at p. 634 [attorney-client privilege waived under California law because client failed to establish that disclosures in the presence of insurance broker were reasonably necessary for his consultation with counsel].)

There are no California cases analyzing whether a communication disclosed to a public relations consultant is a confidential communication between a client and a lawyer under section 952 or whether such a disclosure waives the attorney-client privilege under section 912.  California cases analyzing the exception from a waiver of privilege under section 912, subdivision (d), provide little guidance in determining whether

17

and when sharing a privileged communication with a public relations consultant is "reasonably necessary" because those cases involve very different factual situations. (See, e.g., *National Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476, 484 [no waiver of the privilege in a lawsuit for negligent construction because it was reasonably necessary for the client to give an engineering expert information about the construction of the building so the expert could provide the client's lawyer with a technical analysis]; *Blue Cross v. Superior Court* (1976) 61 Cal.App.3d 798, 801 [no waiver of the physician-patient privilege by disclosing patient names and medical conditions to an insurance company because disclosure "was 'reasonably necessary for . . . the accomplishment of the purpose for which the physician [was] consulted'"]; see also *Raytheon v. Superior Court*, *supra*, 208 Cal.App.3d at p. 689 [case remanded for trial court to determine whether it was reasonably necessary for the client to disclose documents to other companies and their attorneys who also were under investigation by Environmental Protection Agency].)

There are, however, federal decisions applying state law in diversity cases that address whether disclosure of an attorney-client privileged communication to a public relations consultant waives the privilege.[7] (See, e.g., *Grand Canyon Skywalk*

---

[7]    Federal courts apply state privilege law in diversity actions where state law provides the rule of decision. *(Theme Promotions, Inc. v. News America Marketing FSI* (9th Cir. 2008) 546 F.3d 991, 1007; Fed. Rules Evid., rule 501; see *KL Group v. Case, Kay & Lynch* (9th Cir. 1987) 829 F.2d 909, 918 ["[t]he availability of the attorney-client privilege in a diversity case is governed by state law"].)

*Development LLC v. Cieslak* (D.Nev. 2015) 2015 WL 4773585, 9 [finding no waiver under Nevada law of the attorney-client privilege by disclosure to a public relations consultant and, after reviewing cases, concluding "[c]ourts are divided on whether the attorney-client privilege extends to communications between a client's counsel and a public relations consultant that the client or its counsel hires to assist in ongoing or anticipated legal matters or disputes"]; *Egiazaryan v. Zalmayev* (S.D.N.Y. 2013) 290 F.R.D. 421, 431 [finding under New York law, which is similar to California law on this issue, an "agency exception" to the disclosure of privileged communications to third parties where the disclosure is "necessary for the client to obtain informed legal advice"].)

In *Egiazaryan* the plaintiff, a former Russian politician, sued a writer for defamation, and the writer brought counterclaims for defamation and violation of New York's anti-SLAPP statute.[8] (*Egiazaryan, supra*, 290 F.R.D. at p. 421.) The defendant sought discovery of communications between the plaintiff and a public relations firm the plaintiff's attorneys had hired. (*Id.* at p. 425.) The plaintiff asserted the attorney-client privilege and argued the public relations consultants were his "agents." (*Id.* at pp. 427, 430.) The plaintiff submitted declarations and documents showing the public relations consultants "'[d]evelop[ed] a set of key messages and compelling narrative in support of the legal cases,'" "'participate[d] in the development of legal strategy,'" "'contribut[ed] legal

_____

8    New York's anti-SLAPP law authorizes an action for damages. (See New York Law § 70-a, subd. (1); *Friends of Rockland Shelter Animals, Inc. v. Mullen* (S.D.N.Y. 2004) 313 F.Supp.2d 339, 344.)

19

recommendations, provid[ed] next step action plans,'" "'weigh[ed] strategic considerations in order to promote [the plaintiff's] overall legal goals,'" "discussed 'legal options' with [the plaintiff's] attorneys," "gave 'advice in determining the benefits of taking legal action,'" and "'advised counsel for [the plaintiff] as to what might be effectively done on the public relations front . . . so [the attorneys] could properly advise their client as to the appropriate course of action in light of his wider litigation interests.'" (*Id.* at pp. 421, 426, 430-431.) The plaintiff also submitted a privilege log, and the court reviewed in camera the documents the plaintiff withheld from production. (*Id.* at p. 426.)

Yet, even with all of this evidence, the court found the plaintiff had not established the involvement of the public relations consultant was "necessary to facilitate communications *between [the plaintiff] and his counsel*, as in the case of a translator or an accountant clarifying communications between an attorney and client," nor had the consultants "'improved the comprehension of the communications between attorney and client.'" (*Egiazaryan, supra*, 290 F.R.D. at p. 431.) The court held "the party asserting the agency exception must show: '(1) . . . a reasonable expectation of confidentiality under the circumstances, and (2) [that] disclosure to the third party was necessary for the client to obtain informed legal advice.'" (*Ibid.*) The court explained "'the "necessity" element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications.'" (*Ibid.*) The court concluded the "mere fact that [the public relations consultant] was inserted into the legal decisionmaking process does nothing to explain why [the

20

consultant's] involvement was necessary to [the plaintiff's] obtaining legal advice from his actual attorneys." (*Ibid.;* see *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.* (S.D.N.Y. Aug. 25, 2003, No. 02 Civ.7955 DLC) 2003 WL 21998674, 3 ["[a] media campaign is not a litigation strategy," and while "[s]ome attorneys may feel it is desirable at times to conduct a media campaign," such a desire "does not transform their coordination of a campaign into legal advice"]; see, e.g., *Fine v. ESPN, Inc.* (N.D.N.Y May 28, 2015, No. 5:12-CV-0836) 2015 WL 3447690, 11 [under New York law, the agency exception to waiver of the attorney-client privilege by disclosure to a third party did not apply to communications with a public relations consultant retained to shape media coverage of allegations of sexual abuse at a university where the documents "did not contain communications related to obtaining legal advice," and "[i]f public relations support is merely helpful, but not necessary to the provision of legal advice, the agency exception does not apply"]; *McNamee v. Clemens* (E.D.N.Y. Sept. 18, 2013, No. 09 CV 1647) 2013 WL 6572899 at p. 6 [attorney-client privilege under New York law did not protect communications with a public relations consultant because they did not seek legal advice relating to pending litigation, but instead "facilitated the development of a public relations campaign and media strategy primarily aimed at protecting [the client's] public image and reputation in the face of allegations that he used performance-enhancing drugs"].)

Behunin provided little evidence explaining how or why communications among Levick, Steiner, and himself were reasonably necessary to assist Steiner in his ability to advise Behunin or litigate his case. Behunin produced no evidence showing why his or Steiner's communications with Levick were

21

reasonably necessary to develop a litigation strategy or to induce the Schwabs to settle.  Behunin submitted none of the evidence the client in *Egiazaryan* submitted (which in that case still was insufficient) regarding Levick's involvement with Steiner in developing, discussing, or assisting in executing a legal strategy.  To the contrary, according to Behunin, Steiner had little involvement with Levick:  All Steiner did was act as a liaison in hiring the public relations firm.  Behunin and Steiner stated they engaged Levick to "develop and deploy" strategy, they intended their communications with Levick to be confidential, and the goal of the agreement with Levick was "to develop and deploy strategy and tactics of [Behunin's] legal complaint" in the Sealutions lawsuit.  But these statements are just conclusions.  They do not include any evidentiary facts showing or explaining why Steiner needed Levick's assistance to accomplish the purpose for which Behunin retained him.

There may be situations in which an attorney's use of a public relations consultant to develop a litigation strategy or a plan for maneuvering a lawsuit into an optimal position for settlement would make communications between the attorney, the client, and the consultant reasonably necessary for the accomplishment of the purpose for which the attorney was consulted.  But this is not that case.  Behunin had the burden of showing his and Steiner's communications with Levick were reasonably necessary for the accomplishment of the purpose for which Behunin retained Steiner, which was to provide Behunin with legal advice regarding Sealutions and to represent him in his action against the Schwabs.  The discovery referee and the

22

trial judge, both of whom reviewed the documents in camera,[9] found Behunin had not met his burden. (See *OXY Resources, supra*, 115 Cal.App.4th at p. 896 [in camera review is appropriate to determine "whether disclosure to a third party was reasonably necessary to accomplish the lawyer's purpose in the consultation"].) There is insufficient evidence in this record for us to reach a contrary conclusion.

In arguing his and Steiner's communications with Levick were reasonably necessary to accomplish the purpose of Steiner's representation because the negative publicity would help get the Schwabs to the settlement table, Behunin extends the privilege too far. (See *McKesson HBOC, Inc. v. Superior Court, supra,* 115 Cal.App.4th at p. 1236 [attorney-client and other "evidentiary privileges should be narrowly construed because they prevent the admission of relevant and otherwise admissible evidence"]; see also *People v. Sinohui* (2002) 28 Cal.4th 205, 212 ["[b]ecause privileges 'prevent the admission of relevant and otherwise admissible evidence,' they 'should be narrowly construed'"]; *Union Bank of California, N.A. v. Superior Court* (2005) 130 Cal.App.4th 378, 392 [evidentiary privileges "should be narrowly construed because they prevent otherwise admissible and relevant evidence from coming to light"].) To be sure, maximizing

---

[9] Behunin does not argue the in camera reviews violated section 915, which prohibits a court or discovery referee from requiring disclosure of information claimed to be protected by the attorney-client privilege. (Cf. *Costco Wholesale Corp. v. Superior Court, supra*, 47 Cal.4th at pp. 736-740; *DP Pham, LLC v. Cheadle* (2016) 246 Cal.App.4th 653, 666-667.) The discovery referee invited Behunin to submit the documents for in camera review, and Behunin voluntarily accepted the invitation.

23

a client's negotiating position and increasing the prospects for a favorable settlement are important parts of representing a client in litigation. All kinds of strategies could conceivably put pressure on the Schwabs to settle with Behunin, such as hiring away employees of the Schwabs or their company, lobbying governmental officials to enact regulations adverse to the Schwabs' investment business, and creating a competing brokerage business to take away the Schwabs' clients. Such strategies might help get the Schwabs to settle the Sealutions litigation on favorable terms. But that does not mean Behunin's or Steiner's communications with headhunters, lobbyists, and lenders who might finance a competing company would be privileged. Without some explanation of how the communications assisted the attorney in developing a plan for resolving the litigation, Behunin would not be able to show such communications were reasonably necessary to accomplish Steiner's purpose in representing Behunin.

The case on which Behunin primarily relies, *In re Grand Jury Subpoenas Dated March 24, 2003* (S.D.N.Y. 2003) 265 F.Supp.2d 321, is distinguishable. The court in that case applied the federal common law on attorney-client privilege, which is broader than New York law and California law and does not require a finding the communication was reasonably necessary for the attorney to provide legal advice. (See *In re Grand Jury Subpoenas, supra*, at p. 324 [scope of attorney-client privilege is governed by federal common law in cases involving federal questions]; see also *Fine v. ESPN, Inc., supra,* 2015 WL 3447690, at 11, fn. 7 ["courts have declined to extend *In re [G]rand Jury Subpoenas* to cases applying the New York attorney-client

24

privilege rule because New York's agency exception is narrower than the federal rule applied in that case"].)

Moreover, the court's decision in *In re Grand Jury Subpoenas* was based on very specific facts not present here. The case arose in the context of a highly publicized grand jury investigation of a celebrity facing criminal indictment. (*In re Grand Jury Subpoenas, supra*, 265 F.Supp.2d at pp. 323-324.) The celebrity's attorneys hired a public relations firm whose "'primary responsibility was defensive—to communicate with the media in a way that would help restore balance and accuracy to the press coverage. [The] objective . . . was to reduce the risk that prosecutors and regulators would feel pressure from the constant anti-[client] drumbeat in the media to bring charges." (*Id.* at p. 323.) The court explained that protecting such communications from disclosure would support one of the purposes of the attorney-client privilege, the administration of justice: "[The client], like any investigatory target or criminal defendant, is confronted with the broad power of the government. Without suggesting any impropriety, the Court is well aware that the media, prosecutors, and law enforcement personnel in cases like this often engage in activities that color public opinion, . . . in the most extreme cases, to the detriment of his or her ability to obtain a fair trial. . . . Thus, in some circumstances, the advocacy of a client's case in the public forum will be important to the client's ability to achieve a fair and just result in pending or threatened litigation." (*Id.* at p. 330.)

The court in *In re Grand Jury Subpoenas* held that "(1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media *in cases such as this* (4) that are made for

25

the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney-client privilege." (*In re Grand Jury Subpoenas, supra,* 265 F.Supp.2d. at pp. 330-331, italics added.)[10] Courts in subsequent cases have recognized the limited nature of the court's holding. (See *Bloomingburg Jewish Education Center v. Village of Bloomingburg, New York* (S.D.N.Y. 2016) 171 F. Supp.3d 136, 146 ["[c]entral to the court's ruling on the issue of attorney-client privilege [in *In re Grand Jury Subpoenas*] were the special purposes to which the consultants were being used in light of the particular circumstances of that case"]; *Ravenell v. Avis Budget Grp., Inc.* (E.D.N.Y. Apr. 5, 2012, No. 08-CV-2113) 2012 WL 1150450, 3 ["[t]he reach of [*In re Grand Jury Subpoenas* is] limited by its context: the Court couched its finding in the narrow scenario of public relations consultants assisting lawyers during a high profile grand jury investigation"]; *In re Chevron Corp.* (S.D.N.Y. 2010) 749 F.Supp.2d 170, 184, fn. 64 [interpreting *In re Grand Jury Subpoenas* as having a "very narrow holding"

---

[10] The court distinguished an earlier case, *Calvin Klein Trademark Trust v. Wachner* (S.D.N.Y. 2000) 198 F.R.D. 53, where the court found the communications between the public relations firm and the attorneys were not privileged, in part because the purpose of the communications was not to obtain legal advice but to obtain the same ordinary public relations advice the firm had provided to the client in the past. (*Id.* at p. 55.) The court in *Calvin Klein Trademark Trust* explained, "'Nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists, or investigators [or, here, a public relations firm] on their payrolls . . . should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.'" (*Ibid.*)

26

applicable only in "cases such as . . . high profile grand jury investigation[s]"], affd. (2d Cir. 2010) 409 Fed.Appx. 393.)

Behunin also relies on a line of federal cases that have applied the attorney-client privilege to communications with public relations consultants on the ground that the consultant was the functional equivalent of an employee of the client. (See, e.g., *Grand Canyon Skywalk Development LLC v. Cieslak, supra,* 2015 WL 4773585 at p. 17 [communications between a public relations firm and tribal council were privileged because the public relations firm was the "functional equivalent" of a tribal employee]; *In re Copper Market Antitrust Litigation* (S.D.N.Y. 2001) 200 F.R.D. 213 [public relations firm that regularly conferred with the client's litigation counsel in preparing press releases and other materials incorporating the lawyer's advice was the "functional equivalent" of an in-house public relations department].)

These cases extend the rule that the attorney-client privilege applies to communications between counsel and corporate employees seeking legal advice to communications between counsel and those deemed the functional equivalent of corporate employees. (*See U.S. v. Chen* (9th Cir. 1996) 99 F.3d 1495, 1500, citing *Upjohn Co. v. U.S.* (1981) 449 U.S. 383, 390-394). The functional-equivalent cases, however, require a detailed factual showing that the consultant was responsible for a key corporate job, had a close working relationship with the company's principals on matters critical to the company's position in litigation, and possessed information possessed by no one else at the company. (See, e.g., *F.T.C. v. GlaxoSmithKline* (D.C. Cir. 2002) 294 F.3d 141, 148 [documents were protected by attorney-client privilege where the corporation submitted evidence

27

showing corporate counsel worked with public relations consultants in same manner as it did with full-time employees and the consultants were integral members of the team assigned to deal with litigation]; *Schaeffer v. Gregory Village Partners, L.P.* (N.D. Cal. 2015) 78 F.Supp.3d 1198, 1204 [consultant "acted as the public face of the company and provided information to [company's] legal staff that was useful and necessary to evaluate legal strategy . . . [and] acted as [the company's] functional employee for the purposes of the attorney-client privilege"]; *A.H. ex rel. Hadjih v. Evenflo Company, Inc.* (D.Colo. 2012, No. 10-CV-02435-RBJ-KMT) 2012 WL 1957302, 3 [under Colorado law, communications "predominately of a legal character" between public relations consultants and company's attorneys were privileged because the consultants were "functional equivalents" of employees].)  These cases have no application here.  Behunin does not argue that Levick is the "functional equivalent" of his employee, and there is nothing in the record to suggest there was any such relationship between Levick and Behunin or his company.

> 2.	*The Common Interest Doctrine Does Not Apply*

The common-interest doctrine applies where the individuals involved in a communication have common interests such that disclosures between them are reasonably necessary to accomplish the purposes for which they are consulting counsel. (*Citizens for Ceres v. Superior Court, supra*, 217 Cal.App.4th at p. 916.)  "[I]n the context of communications among parties with common interests, it is essential that participants in an exchange have a reasonable expectation that information disclosed will remain confidential. . . .  In addition, disclosure of the

information must be reasonably necessary for the accomplishment of the purpose for which the lawyer was consulted." (*OXY Resources*, *supra*, 115 Cal.App.4th at p. 891; see § 912, subd. (d); *Raytheon Co. v. Superior Court*, *supra,* 208 Cal.App.3d at p. 689 [there is "no 'joint defense privilege' as such in California, but . . . the issue of waiver must be determined under [section 912] with respect to the attorney-client privilege, and depends on the necessity for the disclosure"].) "'For the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter.'" (*OXY Resources,* at p. 891; see *STI Outdoor v. Superior Court* (2001) 91 Cal.App.4th 334, 341 [no waiver of the attorney-client privilege where the "evidence supports the contention that the disclosure of such documents was reasonably necessary to further the interests of both parties in finalizing negotiations for the license agreement"].)

Behunin and Levick do not have a common interest "in securing legal advice related to the same shared matter." (*OXY Resources, supra*, 115 Cal.App.4th at p. 891.) Behunin argues "Levick and [Behunin] shared [an] interest in obtaining legal advice with respect to whether it was permissible to post content on the Internet," and "[s]uch advice clearly encompassed questions regarding [Behunin's and Levick's] potential exposure to legal liability for such statements." There is no evidence, however, that Levick sought legal advice from Steiner or that there was an attorney-client relationship between Steiner and Levick. To the contrary, Behunin stated in his declaration that Steiner hired Levick on behalf of Behunin without knowing

29

anything about the content of the website Levick was to create. Although Levick, as a paid consultant, may have wanted its public relations campaign to succeed, that is not the kind of common interest contemplated by sections 912 and 952. (See *McKesson HBOC, Inc. v. Superior Court, supra,* 115 Cal.App.4th at p. 1237 ["[sections 912 and 952] permit sharing of privileged information when it furthers the attorney-client relationship; not simply when two or more parties might have overlapping interests"]; *Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 225 ["[the plaintiff] merely assumes that, given their overlapping interests, she and [the attorney's client in a different case] could freely share their confidential information without affecting its privileged character," but "[u]nder sections 912, subdivision (d) and 952, [the plaintiff] was bound to show, at minimum, that sharing her confidential information with [the other client] was reasonably necessary to advance her case"].) The common interest doctrine is inapplicable.[11]

---

[11] Although Behunin refers to the attorney work product doctrine in his petition and in his reply, he provides no legal argument or authorities to support the application of that doctrine to documents the court ordered produced. There is also no evidence in the record from which we might independently ascertain whether any of the communications to or from Behunin, Steiner, or Levick or any of the documents created by Levick would qualify as "[a] writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories" and thus work product. (Code Civ. Proc., § 2018.030; see *Citizens for Ceres, supra,* 217 Cal.App.4th at p. 911 [work produced by an attorney's agents and consultants, as well as the attorney's work product, may be protected by the attorney work product doctrine]; *Armenta v. Superior Court* (2002) 101 Cal.App.4th 525, 534 [to the extent an expert's reports "'embrace counsel's impressions

**DISPOSITION**

The petition for writ of mandate is denied. The request by Charles Schwab for sanctions is denied. This court's order staying the discovery proceedings in the trial court is vacated. The Schwabs are to recover their costs in this proceeding.


SEGAL, J.


We concur:


ZELON, Acting P. J.                    SMALL, J.*

---

and conclusions, the work-product doctrine gives absolute protection to that information'"].) Therefore, we do not address Behunin's passing references to the attorney work product doctrine. (See *City of Palo Alto v. Public Employment Relations Board* (2016) 5 Cal.App.5th 1271, 1318 ["[p]oints that are raised that are not supported by reasoned argument and citations to authority may be deemed forfeited"]; *Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750, 762 ["[i]ssues not supported by argument or citation to authority are forfeited"]; Cal. Rules of Court, rule 8.204(a)(1)(C).)

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.